IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JULIE ANN JARRETT, | ) CIVIL ACTION 4:09-2698-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff, Julie Ann Jarrett, filed applications for DIB and SSI on August 15, 2006, with an alleged onset of disability of May 5, 2006. Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially and on reconsideration. The ALJ conducted a hearing on February 6, 2009, at which both plaintiff and a vocational expert (VE) appeared and testified.

On March 13, 2009, the ALJ issued a decision finding that plaintiff was not disabled. In deciding that plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 5, 2006, the alleged onset date (20 CFR 404.1571 *et seq., and 416.971 et seq.*).

3. The claimant has the following severe impairments: osteoarthritis bilateral knees, morbid obesity, and degenerative disc disease and degenerative joint disease of the spine (20 CFR 404.1521 *et seq*. and 416.921 *et seq*.).

4. The claimant does not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1526, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift or carry no more than ten pounds occasionally and less then ten pounds frequently; no standing and/or walking over two hours in an eight-hour workday; no more than occasional stooping, balancing, crouching, kneeling, and climbing of stairs or ramps; and no crawling or climbing of ladders, ropes, or scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 30, 1960, and was 45 years old, which is defined as a younger individual age 45-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

  10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

  11.  The claimant has not been under a disability, as defined in the Social Security Act, at any time from May 5, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-19).

After the Appeals Council denied plaintiff's request for review (Tr. 1-3), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. § 404.981. Plaintiff filed the instant action on October 16, 2009. In her brief, plaintiff argues as follows:

  (1)  the hearing decision does not reflect the ALJ considered or was aware of all of the medical evidence in the case.

  (2)  the ALJ failed to properly consider the opinions from the treating physician.

  (3)  the ALJ did not explain his findings regarding Jarrett's residual functional capacity, as required by Social Security Ruling 96-8p.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and urges that substantial evidence supports the determination that plaintiff was not disabled.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a

conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent her from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## II. FACTUAL BACKGROUND

Plaintiff, born on November 30, 1960, was 48 years of age on the date of her hearing before the ALJ. (Tr. 27). Plaintiff has a high school education and past work as a cashier.[1] (Tr. 28, 61). Plaintiff alleged disability due to pain and muscle spasms in her back, numbness in her legs, chest pain, a broken wrist, and migraine headaches.

## III. ARGUMENTS AND ANALYSIS

Plaintiff argues the hearing decision does not reflect that the ALJ considered or was aware of all of the medical evidence in the case. Specifically, plaintiff argues that the ALJ fails to mention or acknowledge that she had objective evidence proving she also had degenerative arthritis in her hands, wrists, hips, and shoulder. While the ALJ acknowledged a medical record dated October 31, 2005, that the ALJ described as showing some degenerative changes to the right knee, plaintiff argues he ignored the medical evidence indicating her knee arthritis was much more severe than conceded in the hearing decision. Furthermore, plaintiff argues the ALJ failed to address the problems with her hands even though the medical records showed she had a significant fracture of her left distal radius in July 2002 that required an open reduction and internal fixation surgery, had additional surgery in 2003, and was left with extensive scarring in her left hand. Therefore, plaintiff

---

[1] Plaintiff testified that she quit her job as a cashier with Burger King when she moved from Indiana to South Carolina. Plaintiff testified that she did not apply for work after she moved to South Carolina except at Wal-Mart. She testified that she was offered a position at Wal-Mart but did not take the job "because at the time I was not feeling up to standing eight to 10 hours." (Tr. 33-34).

requests that the court remand her case for the ALJ to consider whether the documented arthritis in her hands, wrists, shoulders, and hips are severe impairments, and, if so, what impact these additional impairments would have on her functional capacity.

First, plaintiff argues that the ALJ did not take into consideration the fact that the "objective medical evidence prov[es] she also had degenerative arthritis in her hands, wrists, hips and shoulder." However, plaintiff had the surgeries on her hands in July 2002 and March 2003, and continued to work until 2006. Based on the evidence, there were no restrictions or functional limitations placed on the use of her hands by any treating physician. Therefore, the undersigned finds no error in the ALJ failing to discuss this in his decision.[2]

Additionally, plaintiff's argument that the ALJ ignored the medical evidence indicating plaintiff's knee arthritis was much more severe than conceded in the hearing decision fails. The ALJ found plaintiff has as one of her severe impairments "osteoarthritis bilateral knees." (Tr. 13). The ALJ limited the residual functional capacity to "no standing and/or walking over two hours in an eight hour workday, no more than occasional stooping, balancing, crouching, kneeling, and climbing of stairs or ramps; and no crawling or climbing of ladders, ropes, or scaffolds." (Tr. 14). Further, the ALJ noted that plaintiff underwent a consultative examination with Dr. Jean Englee on November 15, 2006, when she complained of low back pain and muscle spasms. From the examination, Dr. Englee opined she had "no misalignment or tenderness in the lower extremity. She had full range of motion, normal stability, strength and tone in the lower extremity . . ." (Tr. 15). The undersigned finds there is substantial evidence to support the ALJ's decision with regard to her knees.

---

[2] The ALJ stated in his decision that he "considered the entire record including clinical findings, results of diagnostic studies, medical opinions, the claimant's subjective allegations. . ." Tr. 18.

Plaintiff next argues the ALJ failed to properly consider the opinions of her treating physician Dr. Schlueter. Specifically, plaintiff argues the ALJ erred in not properly considering Dr. Schlueter's letter dated February 4, 2009, indicating that she would be unable to perform employment that would require any specific physical activity that would require "prolonged pushing, pulling, lifting, sitting, standing, walking." Plaintiff argues that "[w]hile a more precise definition of 'prolonged' would have been helpful, Dr. Schlueter's statement would clearly prohibit the kinds of extended sitting required by the sedentary jobs cited by the ALJ in the hearing decision." (Plaintiff's brief, p. 24-25). Plaintiff further asserts that while Dr. Schlueter did not precisely define "regular absence," a reasonable interpretation would "preclude sustained full-time work activity." (Id. at 25). Plaintiff argues that in dismissing Dr. Schleuter's opinion, the ALJ substituted his own medical opinion for that of the treating physician. (Id.).

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see id. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654) (internal citation omitted). The rule, however, does not mandate that her opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 61 Fed. Reg. 34,490-01, 34,491 (July 2, 1996); see also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication,

7

if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

A review of the hearing decision reveals the ALJ found the following with regards to Dr. Schlueter's[3] opinion:

> On February 4, 2009, Eric M. Schlueter, M.D. indicated in a report that the claimant was first seen on January 11, 2007. At this first visit she stated that she had back and knee pain. Old records dated October 31, 2005, revealed some degenerative changes in the right knee. An MRI of the lumbar-sacral spine on August 22, 2005, revealed mild degenerative changes without focal disc herniation or nerve impingement. Over the course of the longitudinal record of treatment, the claimant has complained of pain which has been treated with narcotic and other medications. A referral to a pain management specialist was considered, but the lack of insurance prevented this from happening. Dr. Schlueter also noted that the claimant reported complaints of hip pain, knee pain, neck pin, and shoulder pain. The claimant stated that without her medication, the pain is a 9/10 with a 10/10 being the highest rating. Dr. Schlueter further noted that over the course of his treatment of the claimant, he has not performed a specific physical capacities evaluation. However, based upon his experience with the claimant he does not believe that the claimant will be able to perform employment that would require any specific physical activity that would require prolonged pushing, pulling, lifting, sitting, standing or walking, and because of the nature of her other pain complaints she would be limited in work-related obligations as her symptoms would contribute to regular absence from work.
>
> . . .
>
> I find that the evidence, including the clinical findings, laboratory findings, observations, and the claimant's activities of daily living, does not support the statement by Dr. Schlueter. His statement is very vague, imposes no specific functional limitations, and references only mild degenerative disc disease and degenerative joint disease. The total evidence clearly demonstrates that the

---

[3] Dr. Schlueter stated in his letter dated February 4, 2009, that he did not perform any "specific physical capacities evaluation" over the course of his treatment. (Tr. 666)

> claimant's impairments do not render her disabled for the reasons set forth earlier in this decision. Therefore, I give little weight to Dr. Schlueter's opinion.

(Tr. 16).

In further support of the ALJ's opinion, he noted the report from the consultative examination by Dr. Englee on November 15, 2006, who found no edema, or varicosities of the extremities. The ALJ further noted that Dr. Englee opined "[t]he abdomen, was soft, non-tender, without masses, hernias or bruits. The claimant had no misalignment or tenderness in the upper extremity. She had full range of motion, normal stability, strength and tone in the upper extremity. There was no misalignment or tenderness in the lower extremity. She had full range of motion, normal stability, strength and tone in the lower extremity. Dr. Englee's impression was lumbosacral bilateral extremity pain, obesity, and history of tobacco abuse. An x-ray of the claimant's lumbar spine was normal."  (Tr. 15). Further, the ALJ noted in the decision that the results of the MRI revealed "only mild degenerative change without focal disc herniation or impingement." (Tr. 16). Additionally the ALJ found as follows:

> There are few objective findings to support the claimant's subjective complaints. A consultative examination shows virtually no abnormal findings and only mild arthritis. The claimant has full range of motion in all extremities. There is a long consistent history of complaints of low back pain as well as repeated requests for narcotic pain medications, yet she testified that pain medications do not help. The claimant's credibility is hurt by the extensive list of complaints without objective evidence.

(Tr. 17).

Based on a review of the above, the ALJ's decision with respect to Dr. Schlueter's opinion

is supported by substantial evidence.[4]

Plaintiff argues the ALJ did not explain his findings regarding plaintiff's residual functional capacity ("RFC") as required by Social Security Ruling 96-8p. In her brief, plaintiff argues the ALJ found she was restricted to a limited range of sedentary work activity, but the ALJ does not explain how he arrived at these restrictions. Plaintiff contends that the "decision gives no inkling what the ALJ's finding on the sitting restriction is, or whether he even made a finding regarding Jarrett's restrictions on sitting." (Plaintiff's brief, p. 29). Additionally, plaintiff argues the RFC assessment is conclusory and failed to discuss why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence as required.

In the ALJ's decision, he states that after considering the record, he finds plaintiff has the residual functional capacity to lift or carry no more than ten pounds occasionally and less then ten pounds frequently; no standing and/or walking over two hours in an eight-hour workday; no more than occasional stooping, balancing, crouching, kneeling, and climbing of stairs or ramps; and no crawling or climbing of ladders, ropes or scaffolds. In reaching this conclusion, the ALJ set forth over three pages outlining why he found plaintiff's testimony not credible, the results of the medical examination by Dr. Englee, results of an MRI, the fact that Dr. Schlueter's report was unsupported by his records, and plaintiff's reported daily activities. (Tr. 14-18). As to sitting, the ALJ found that plaintiff was limited to no more than two hours of standing and/or walking which leaves six hours

---

[4] While considering the State agency consultants opinions, the ALJ did not accord them significant weight because new evidence was submitted that was not available for review by the state agency physicians. However, these records also support the ALJ's decision. (See Tr. 557, 559-566; 567-574).

10

of sitting in an eight hour work day. Even though the ALJ did not explicitly state plaintiff could sit for six hours, he found plaintiff was capable of performing sedentary work and with the standing and/or walking restriction, he implicitly found her sitting restricted to be six hours in an eight hour day. As discussed above, there is substantial evidence to support the ALJ's finding in discounting Dr. Schuelter's report and finding plaintiff's testimony less than fully credible. Therefore, the ALJ's RFC finding is supported by substantial evidence and complies with the Social Security Rules.

### IV.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  <u>Richardson</u>, 402 U.S. at 390.  Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock,</u> 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989.  As previously discussed, despite the plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.

           Respectfully submitted,

           s/Thomas E. Rogers, III
           Thomas E. Rogers, III
           United States Magistrate Judge

January 5, 2011
Florence, South Carolina